IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY RICHARDS,                    )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        1:19CV759
                                      )
PHH MORTGAGE CORPORATION,[1]          )
Successor by Merger to OCWEN          )
LOAN SERVICING, LLC, and              )
THE BANK OF NEW YORK                  )
MELLON CORPORATION, as                )
Trustee for Metropolitan             )
Mortgage Funding, Inc.,               )
Mortgage Pass-Through                 )
Certificates, Series 2000B,           )
                                      )
                Defendants.           )


## <u>MEMORANDUM OPINION AND ORDER</u>

**OSTEEN, JR., District Judge**

        Presently before the court is the Motion to Dismiss

Plaintiff's Complaint filed by Defendants The Bank of New York

Mellon Corporation ("BONY") and PHH Mortgage Corporation

---

        [1] The case caption in this case is hereby modified to
reflect the proper Defendants. (<u>See</u> <u>infra</u> at 15-16.) Defendant
Ocwen Loan Servicing, LLC, is no longer a defendant in this case
and is hereby terminated.

("PHH"),[2] (Doc. 7), pursuant to Federal Rules of Civil Procedure 12(b)(5) for failing to timely serve process on Defendant BONY, and 12(b)(6) for failure to state a claim as to both Defendants, respectively. Plaintiff has also filed a Motion for Extension of Time to Serve Defendant The Bank of New York Mellon Corporation. (Doc. 10.) These matters are ripe for resolution and, for the following reasons, this court will grant Defendants PHH and BONY's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), deny Defendant BONY's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(5), and grant Plaintiff's motion for extension.

## I.   **PARTIES AND FACTUAL BACKGROUND**

The facts, construed in the light most favorable to Plaintiff, are as follows.

### A.   **Parties**

Plaintiff Kimberly Richards is a citizen of Forsyth County, North Carolina. (Complaint ("Compl.") (Doc. 5) ¶ 3.) Defendant BONY is a Delaware corporation doing business in North Carolina. (Id. ¶ 4.) PHH is a Delaware limited liability company in the

---

[2] While Plaintiff lists Ocwen Loan Servicing, LLC, as a defendant instead of PHH Mortgage Corporation ("PHH"), PHH is the successor by merger to Ocwen Loan Servicing, LLC. (See Defs.' Motion to Dismiss (Doc. 7) at 1 n.2.) The court will nevertheless refer to this entity as PHH Mortgage Corporation instead of Ocwen Loan Servicing, LLC, throughout this Memorandum Opinion and Order for the sake of continuity.

business of servicing mortgage loans in North Carolina. (Id. ¶ 5.)

**B.  Factual Background**

Plaintiff owns a home in Kernersville, North Carolina, where she resides. (Id. ¶ 14.) Plaintiff and her then-husband obtained a loan from Crown Bank in 1998, which was secured by a deed of trust on the home. (Id. ¶¶ 15-16.) Defendant BONY is the current holder of the loan. (Id. ¶ 18.) PHH has always acted as the agent of the holder of the loan. (Id. ¶ 19.) Plaintiff made monthly payments on the loan for fifteen years, until 2013, when her loan matured. (Id. ¶ 20.)

On May 29, 2013, PHH contacted Plaintiff via letter "to inform her of the HAMP loan program, which was created by the United States Treasury Department to assist homeowners in avoiding foreclosure," and that she was entitled to receive a HAMP modification to her loan.[3] (Id. ¶¶ 22-23.) In this letter, PHH told Plaintiff that "to accept the modification, she needed

---

[3] The Home Affordable Modification Program ("HAMP") "is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The [SPAs] between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines." Campbell v. CitiMortgage, Inc., No. 1:11CV1017, 2014 WL 4924251, at *6 (M.D.N.C. Sept. 30, 2014) (quoting Watkins v. Flagstar Bank, FSB, C/A No. 3:11-3298-CMC-PJG, 2012 WL 1431380, at *1 n.2 (D.S.C. Apr. 2, 2012)).

to make three trial payments," and that "[a]fter all trial
period payments are timely made and you have submitted all the
required documents, your mortgage will be permanently modified."
(Id. ¶¶ 24, 25) (internal quotation marks omitted). Plaintiff
alleges she began making trial payments and submitted all of the
required documents. (Id. ¶ 26.)

     PHH again contacted Plaintiff via letter on July 1, 2013,
stating that she was "eligible for a Home Affordable
Modification," and that if she "compl[ied] with the terms of the
Home Affordable Modification Trial Period Plan, [PHH would]
modify [her] mortgage loan and waive all prior late charges that
remain[ed] unpaid." (Id. ¶ 27.) Plaintiff allegedly made the
trial payments via telephone. (Id. ¶ 28.)

     When Plaintiff attempted to make the third trial payment,
however, PHH customer service informed her that "she could not
make the payment because her loan modification had been denied."
(Id. ¶ 29.) Plaintiff alleges that "PHH had no right to deny the
loan modification once [Plaintiff] began making the trial
payments." (Id. ¶ 30.) Plaintiff complained to PHH about this
denial, and PHH sent another letter on September 25, 2013. (Id.
¶ 31.) This letter stated that "PHH's records indicate that your
loan was approved for a HAMP trial payment plan on May 29, 2013.
All trial payments were received as per the agreement and the

- 4 -

HAMP Final Modification Agreement was sent to your attention on July 2, 2013." (Id. ¶ 32.) The letter further stated that, because Plaintiff's loan matured on June 2, 2013, that "PHH would be unable to offer you a HAMP modification because your loan had already reached its maturity date." (Id. ¶¶ 33, 35.) PHH "admitted that it had in prior correspondence represented that [Plaintiff] was entitled to the HAMP modification," but that "PHH was notified that the investor on the loan will not allow the maturity date to be extended." (Id. ¶ 37.)

Plaintiff alleges that she entered into the HAMP modification contract before her loan matured, (id. ¶ 36), and that loan servicers, like PHH, that participate in the HAMP program "must comply wi[th] all applicable Treasury Regulations," (id. ¶ 38). She further alleges that the HAMP regulations "do not permit an investor to withdraw a HAMP modification that has been offered and accepted." (Id. ¶ 39.)

Plaintiff brings two claims against Defendants. First, she brings a common-law breach of contract claim, in which she alleges that she entered into a valid contract with Defendants for the HAMP modification, and that Defendants "breached the HAMP Modification by refusing to accept the third trial payment, and also by refusing to finalize the permanent modification of the 1998 Loan." (Id. ¶¶ 44–47.) Plaintiff's second claim pleads

unfair and deceptive trade practices pursuant to North Carolina
General Statutes Chapter 75, specifically that "Defendant PHH
repeatedly deceived [Plaintiff] with regard to her eligibility
for a HAMP modification," and that "it had modified
[Plaintiff's] loan to allow her to continue making payments
under the HAMP modification." (Id. ¶¶ 51–52.)

### C. **Procedural History**

Plaintiff originally brought suit against Defendants in the
Superior Court for Forsyth County, North Carolina, on June 29,
2017, for breach of contract and unfair and deceptive trade
practices under state law. (Notice of Filing (Doc. 14) Ex. 1,
Summons and Complaint from 2017 Action (Doc. 14-1).) Plaintiff
voluntarily dismissed this action on May 14, 2018. (Pl.'s Mem.
in Opp'n to Defs.' Motion to Dismiss (Doc. 9) Ex. 1, Notice of
Voluntary Dismissal Without Prejudice (Doc. 9-1).)

Plaintiff then refiled the current Complaint in the
Superior Court of Forsyth County, North Carolina, on April 29,
2019, pursuant to Rule 41(a)(1) of the North Carolina Rules of
Civil Procedure. (Compl. (Doc. 5).) On June 24, 2019, Plaintiff
mailed the summons and Complaint via United States Postal
Service certified mail to each Defendant. (Pl.'s Motion for
Extension ("Pl.'s Extension Mot.") (Doc. 10), Ex. 1, Proof of
Mailing (Doc. 10-1) at 1.) The receipt given to Plaintiff

indicates that the estimated delivery date for PHH was June 26,
2019, and the estimate delivery date for BONY was June 27, 2019.
(Id.) PHH was timely served on June 26, 2019. (Compl. (Doc. 5)
at 14.)[4] Defendant BONY was not served until July 2, 2019. (Id.
at 9.) It appears Plaintiff took no other actions to serve
process on Defendants.

Defendants removed the case to this court pursuant to 28
U.S.C. §§ 1332, 1441, and 1446 on July 26, 2019. (Petition for
Removal ("Pet. for Removal") (Doc. 1).) Defendants moved to
dismiss Plaintiff's claims pursuant to Federal Rules of Civil
Procedure 12(b)(5) and 12(b)(6), (Doc. 7), and filed a
memorandum in support of that motion. (Defs.' Br. (Doc. 8).)
Plaintiff filed a response, (Doc. 9), to which Defendants
replied. (Doc. 12.)

On the same day Plaintiff responded to Defendants' Motion
to Dismiss, Plaintiff also filed a motion for an extension of
time to serve Defendant BONY, (Pl.'s Extension Mot. (Doc. 10)),
and a memorandum in support of that motion, (Plaintiff's Brief
("Pl.'s Extension Br.") (Doc. 11)). Defendant BONY responded in

---

[4] All citations in this Memorandum Opinion and Order to
documents filed with the court refer to the page numbers located
at the bottom right-hand corner of the documents as they appear
on CM/ECF.

opposition to Plaintiff's motion. (BONY Extension Resp. (Doc. 13).)

## II.  **LEGAL STANDARDS OF REVIEW**

### A.  **Rule 12(b)(5)**

A motion to dismiss under 12(b)(5) challenges the sufficiency of the act of "service" of process, objecting to a defect in the act of delivery. Plaintiff bears the burden of establishing proper process and service of process. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In determining whether the plaintiff has satisfied her burden, the technical requirements of service should be construed liberally as long as the defendant had actual notice of the pending suit. Karlsson v. Rabinowitz, 318 F.2d 666, 668-69 (4th Cir. 1963). "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); see also Tart v. Hudgins, 58 F.R.D. 116, 117 (M.D.N.C. 1972) (observing that a liberal interpretation of process requirements "does not mean . . . that the provisions of the Rule may be ignored if the defendant receives actual notice").

**B.   Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556–57). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, the factual allegations must be sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see also Iqbal, 556 U.S. at 680; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (applying the Twombly/Iqbal standard to evaluate the legal sufficiency of pleadings). A court cannot "ignore a clear

failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore, 335 F. Supp. 2d at 646. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## III. **ANALYSIS**

Defendant BONY moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(5), and both Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6). The court will address each issue in turn. A Rule 12(b)(5) motion implicates whether the court properly exercises personal jurisdiction over Defendant BONY, and thus the court must address that motion before it can address any issues on the merits under Rule 12(b)(6). See Sky Cable, LLC v. DIRECTV, Inc., 886 F.3d 375, 391 (4th Cir. 2018) ("Typically, service of process is a precondition to a court's exercise of personal jurisdiction over a defendant."); Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant."); see also Federated Dep't

Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.") (internal quotation marks omitted). The court will therefore address Defendant BONY's Rule 12(b)(5) claim first.

### A.   Service of Process under Rule 12(b)(5)

Plaintiff filed her Complaint in the Superior Court for Forsyth County, North Carolina, on April 29, 2019. (Compl. (Doc. 5).) She served process on Defendant PHH on June 26, 2019, (id. at 14), but may not have served process on Defendant BONY until July 2, 2019, (id. at 9). Plaintiff has filed a motion for an extension of time to serve Defendant BONY, (Doc. 10), and Defendant BONY has responded in opposition, (Doc. 13).

Defendant BONY argues that Plaintiff's service on Defendant BONY was untimely under North Carolina law and the Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(5). Defendant BONY further argues that it will be prejudiced if the court grants Plaintiff's Motion for Extension of Time. (BONY Extension Resp. (Doc. 13) at 3–5.) Defendant BONY argues that granting Plaintiff's motion for a time extension will undercut the purposes statutes of limitations serve: peace of mind and fairness to defendants. (Id. at 4.)

If a case originally filed in state court is removed to federal court, the Federal Rules of Civil Procedure do not apply until after the action is removed. Fed. R. Civ. P. 81(c)(1). "[T]he validity of service prior to removal is determined by the law of the state under which service was made." Brazell v. Green, No. 94-7214, 1995 WL 572890, at *1 (4th Cir. Sept 29, 1995). Defendants did not remove the case to federal court until July 26, 2019. (Pet. for Removal (Doc. 1).) Thus, because Plaintiff served process on Defendants prior to removal of the case, North Carolina law applies with regard to the sufficiency of the service.

Rule 4 of the North Carolina Rules of Civil Procedure therefore dictates how Defendants should be served process. Per Rule 4(c), personal service "must be made within 60 days after the date of the issuance of summons." N.C. Gen. Stat. § 1A-1, Rule 4(c).

Rule 4(d) of the North Carolina Rules of Civil Procedure explains how a plaintiff who fails to serve a defendant within the allotted 60 days may extend the time allowed to serve that defendant. Under N.C. Gen. Stat. § 1A-1, 4(d)(1), a plaintiff may return to the clerk's office to "secure an endorsement upon the original summons," as long as the endorsement is secured within 90 days of the issuance of the summons or the date of the

last prior endorsement. Alternatively, under Rule 4(d)(2), a plaintiff "may sue out an alias or pluries summons" in the same manner as the original process, which may be done "at any time within 90 days after the date of issue of the last preceding summons in the chain of summonses or within 90 days of the last prior endorsement." Here, Plaintiff, upon finding out that Defendant BONY was not served until July 2, 2019, took neither route to receive an extension or to serve an alias or pluries summons.

28 U.S.C. § 1448, however, provides that:

> [i]n all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Plaintiff thus has "a chance to overcome her invalid service of process under North Carolina law by properly serving [Defendant BONY] under the federal rules." Jones v. SSC Durham Operating Co., No. 1:17CV686, 2019 WL 290036, at *3 (M.D.N.C. Jan. 22, 2019).

Plaintiff therefore rightfully attempts to use Fed. R. Civ. P. 4(m) to rectify her mistake. (Pl.'s Extension Br. (Doc. 11) at 3.) Under Fed. R. Civ. P. 4(m), Plaintiff has 90 days from

the time of removal to serve Defendant BONY with process. See
Brower v. AT&T Mobility Servs., LLC, Civil Action No. RDB-18-
2207, 2018 WL 4854168, at *3 (D. Md. Oct. 5, 2018). Fed. R. Civ.
P. 4(m) further allows a plaintiff who fails to serve a
defendant within the applicable time limit to "show[] good cause
for the failure," and if the plaintiff does so, "the court must
extend the time for service for an appropriate period."

Here, Plaintiff has established good cause. Plaintiff
served Defendant BONY by certified mail, (Compl. (Doc. 5) at 12;
Pl.'s Extension Mot. (Doc. 10) at 2), which was estimated to
reach Defendant BONY by June 27, 2019. (Pl.'s Extension Mot.,
Ex. 1 (Doc. 10-1).) Instead, it took the United States Postal
Service five extra days to deliver service on Defendant BONY.
This unexpected delay was out of Plaintiff's control. This
delay, along with her success in timely serving Defendant PHH,
are sufficient to demonstrate good faith and due diligence in
attempting to serve timely process on Defendant BONY. See Elkins
v. Broome, 213 F.R.D. 273, 276 (M.D.N.C. 2003) (holding that the
plaintiff demonstrated good cause when he hired a professional
process server and "reasonably believed that service of process
had been made" on the defendant).

Plaintiff named in her Complaint as a defendant "The Bank
of New York Mellon Corporation." (Compl. (Doc. 5) at 1.) A

summons was issued to "The Bank of New York Mellon Corporation," (Doc. 6 at 1), and Plaintiff attempted to serve the summons by certified mail, return receipt requested. (See Pl.'s Extension Mot. (Doc. 10) at 1–3; Ex. 1 (Doc. 10-1) at 1–2).

Although the summons may not have been timely served, Defendants BONY and PHH both filed a notice of removal. (Pet. for Removal (Doc. 1).) In that notice of removal, BONY specifically reserved its right to challenge service of process. (Id. at 2 n.3.) However, also in that notice of removal, both BONY and PHH asserted that the defendants were incorrectly designated. That notice of removal recites in a footnote the following as to BONY:

> The Complaint names the Bank of New York Mellon Corporation, however, the complete entity name is the Bank of New York Mellon Corporation, as Trustee for Metropolitan Mortgage Funding, Inc., Mortgage Pass-Through Certificates, Series 2000B.

(Id. at 1 n.1.) Similarly, the notice of removal also recites in a footnote that:

> The Complaint names Ocwen Loan Servicing, LLC as Defendant instead of PHH Mortgage Corporation. PHH Mortgage Corporation is a successor by merger to Ocwen Loan Servicing, LLC, therefore, we will refer to the entity now known as PHH Mortgage Corporation instead of Ocwen Loan Servicing, LCC.

(Id. at 1 n.2.) This is an unusual procedural occurrence, as it appears parties are being substituted without either consent of

Plaintiff or an order of the court pursuant to Fed. R. Civ. P. 25. The court appreciates the fact that Defendants have chosen to proceed expeditiously with this case. On the other hand, this procedure does not create a clear record as to agreement or disagreement as to citizenship for purposes of determining jurisdiction as with a complaint and answer. Furthermore, it does not result in a clear admission of whether or not these parties are proper parties. And finally, it allows substitution of at least one party without the necessity of a motion or other action, arguably improperly preserving a Rule 12 challenge to personal service.

Nevertheless, in the absence of any objection from Plaintiff or a motion to remand, this court will find that the proper parties to this action are The Bank of New York Mellon Corporation, as Trustee for Metropolitan Mortgage Funding, Inc., Mortgage Pass-Through Certificates, Series 2000B, and PHH Mortgage Corporation. The notice of removal recites that BONY is a Delaware corporation and PHH is a New Jersey corporation. (Pet. for Removal (Doc. 1) at 2-3.) Based upon those allegations, the court further finds, in the absence of any objection, that removal is proper and jurisdiction exists pursuant to 28 U.S.C. § 1441. (Id. at 1-2.)

Furthermore, this court does not find BONY is prejudiced. The court finds that BONY's conclusory assertions of prejudice here are insufficient to suggest the court should deny Plaintiff's motion for extension of time to effect service. First of all, counsel's statement that "[u]ndersigned Counsel was unaware of this filing when Defendant moved to dismiss this action, as it is not referenced in the Complaint," (BONY Extension Resp. (Doc. 13) at 3), fails to establish prejudice, as it is prejudice to a party that is material, not prejudice to counsel. See Ghazarian v. Specialized Bicycle Components, Inc., No. 5:18CV115, 2019 WL 315997, at *3 (W.D.N.C. Jan. 24, 2019) (holding that "there is no prejudice to the Defendant" when the defendant argued the plaintiff violated Rule 4(m) (emphasis added)); Robinson v. G D C, Inc., 193 F. Supp. 3d 577, 580 (E.D. Va. 2016) ("Among the many factors bearing on the good cause inquiry [for failure to serve] are . . . the possibility of prejudice to the defendant." (emphasis added)). Second, Defendant BONY makes a general suggestion that BONY has been denied peace of mind and unfairly required to piece together a defense. (BONY Extension Resp. (Doc. 13) at 4.) Defendant does not explain what "peace of mind" means to BONY, and clearly Defendant has the ability to piece together a statute of limitations defense, among others.

The court finds Plaintiff's motion for an extension of time should be granted. BONY is timely served and the court will consider the motion to dismiss filed by BONY and PHH.[5]

## B. **Statute of Limitations under Rule 12(b)(6)**

Defendants PHH and BONY argue that Plaintiff's claims are time barred, or, in the alternative, if they are not time barred, that Plaintiff fails to state a claim. This court agrees with Defendants that Plaintiff's breach of contract claim is time barred, and that Plaintiff fails to state a claim for unfair and deceptive trade practices under state law.

First, Plaintiff's breach of contract claim is subject to N.C. Gen. Stat. § 1-52(1), which provides that actions concerning breach of contract have a three-year statute of limitations. A cause of action for breach of contract accrues "from the time when the first injury was sustained." Matthieu v. Piedmont Nat. Gas Co., 269 N.C. 212, 215, 152 S.E.2d 336, 339 (1967). North Carolina Rule of Civil Procedure 41(a)(1) allows a plaintiff who voluntarily dismisses a timely action to refile within one year. Here, Plaintiff's breach of contract action accrued on September 25, 2013, when Defendant PHH sent Plaintiff

---

[5] Because BONY has substituted parties, was in fact served, responded on the merits to the Complaint, and because the motion to dismiss will be granted, this court will deny the 12(b)(5) motion and find BONY has been served.

the letter stating that Defendant PHH would not be going through
with the HAMP modification. (Compl. (Doc. 5) ¶¶ 32–35.)
Plaintiff therefore had until September 25, 2016, to bring her
breach of contract claim; Plaintiff, however, did not bring her
original lawsuit for breach of contract until June 29, 2017.
(Notice of Filing, Ex. 1 (Doc. 14-1) at 1.) Plaintiff's claim
for breach of contract is therefore time barred and the court
will grant Defendant's motion to dismiss this claim pursuant to
Fed. R. Civ. P. 12(b)(6).

Plaintiff's unfair trade practices claim is not time
barred. N.C. Gen. Stat. § 75-16.2 provides a four-year statute
of limitations for unfair and deceptive trade practices claims.
Because this cause of action is based upon the same set of facts
alleged as to Defendants' actions, this claim accrued on
September 25, 2013. Plaintiff therefore had until September 25,
2017, to bring this claim. Plaintiff filed her original claim on
June 29, 2017, and therefore this claim is not time barred.

C.   **Failure to State an Unfair and Deceptive Trade
     Practices Claim under Rule 12(b)(6)**

Because Plaintiff's breach of contract claim is time
barred, the court will only consider whether Plaintiff has
stated a claim for unfair and deceptive trade practices pursuant
to N.C. Gen. Stat. § 75-1.1 ("Chapter 75") (a "UDTPA claim").

Plaintiff alleges that "[t]he HAMP regulations do not permit an investor to withdraw a HAMP modification that has been offered and accepted." (Compl. (Doc. 5) ¶ 39.)

"[A]lthough a HAMP violation . . . does not in and of itself create a private right of action, allegations that a defendant violated HAMP by using (or in circumstances involving) 'unfair or deceptive acts or practices' can serve as the basis for a UDTPA claim." Salami v. JPMorgan Chase Bank, N.A., No. 1:18CV794, 2019 WL 2526467, at *8 (M.D.N.C. June 19, 2019); see also Campbell v. CitiMortgage, Inc., 1:11CV1017, 2014 WL 4924251, at *13 (M.D.N.C. Sept. 30, 2014).

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has the tendency to deceive." Id. This is a question of law for the court to decide. Id. A plaintiff who succeeds in an action under Chapter 75 is entitled to treble damages. N.C. Gen. Stat. § 75-16.

While Chapter 75 "is broader and covers more than traditional common law proscriptions on tortious conduct, though fraud and deceit tend to be included within its ambit. . . . [It] does not, however, prohibit all wrongful conduct stemming from commercial transactions." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013). "[S]ection 75-1.1 does not, for example, apply to an individual who merely breaches a contract," even intentionally. Id.; see also Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013). Aggravating circumstances, however, "such as deceptive conduct by the breaching party, can trigger the provisions of the Act." Cullen v. Valley Forge Life Ins. Co., 161 N.C. App. 570, 578, 589 S.E.2d 423, 430 (2003). These circumstances may include forging documents, lies, and fraudulent inducements. See Stack, 979 F. Supp. 2d at 668 (collecting cases).

Plaintiff alleges few actions on the part of Defendant BONY beyond currently being the holder of the loan. (Compl. (Doc. 5) ¶ 18.) While Plaintiff also alleges that "[PHH] at all relevant times has acted as the agent of the holder of the Loan," Plaintiff does not allege that BONY was the holder of the loan at the relevant time, such that BONY could be held responsible for PHH's actions. Further, Plaintiff alleges "Defendants acted deceptively in the communications to Ms. Richards regarding the

HAMP Modification," and that Defendants' actions were unfair and deceptive. (Id. ¶¶ 55-56, 58.) Plaintiff therefore fails to submit more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." Iqbal, 556 U.S. at 678. The court finds that Plaintiff fails to state a UDTPA claim against Defendant BONY.

Regarding whether Defendant PHH committed an unfair or deceptive trade practice, Defendant PHH argues that "plaintiff only alleges unfairness and deception based on there, allegedly, being a breach of contract," and that this is merely a repackaging of her breach of contract claim. (Defs.' Br. (Doc. 8) at 8.) Defendant PHH asserts that there are no "substantial aggravating circumstances" to justify treble damages. (Id.) This court agrees.

Plaintiff alleges that "Defendant PHH repeatedly deceived [Plaintiff] with regard to her eligibility for a HAMP modification," and that "Defendant PHH also repeatedly misrepresented that it had modified [Plaintiff's] loan to allow her to continue making payments under the HAMP modification." (Compl. (Doc. 5) ¶¶ 51-52.) She further alleges that "Defendants acted deceptively in the communications to [Plaintiff] regarding the HAMP Modification," and that "Defendants['] actions were unfair in that Defendants, in derogation of [Plaintiff's]

rights, and in violation of applicable Treasury Regulations purported to deny the HAMP Modification they previously agreed to provide to [Plaintiff]." (Id. ¶¶ 55–56.) These statements, however, are merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and "[will] not suffice," in creating a plausible claim for unfair and deceptive trade practices. Iqbal, 556 U.S. at 678.

A closer look at Plaintiff's Complaint further reveals no aggravating circumstances; at most, it reveals a potential breach of contract. In particular, Plaintiff alleges that PHH told Plaintiff in May 2013 that she was entitled to receive a HAMP modification, which PHH admitted in its September 25, 2013 letter. (Compl. (Doc. 5) ¶¶ 23, 32.) Plaintiff "began making the trial payments, and submitted all required documentation," though the Complaint does not contain the exact dates of these actions. (Id. ¶ 26.) On July 1, 2013, PHH wrote Plaintiff a letter stating, "Congratulations! You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid." (Id. ¶ 27.) The Complaint then states that Plaintiff made her payments by phone, again omitting any dates. (Id. ¶ 28.)

When Plaintiff attempted to make her third and final payment necessary to make the modification permanent, PHH told her that her loan modification had been denied. (Id. ¶ 29.) The Complaint does not state when this conversation occurred.

"When [Plaintiff] complained that PHH had wrongfully denied her HAMP modification, PHH responded in a letter dated September 25, 2013." (Id. ¶ 31.) In this letter, PHH admitted approving Plaintiff's loan for a HAMP trial payment plan in May 2013 and stated that "[a]ll trial payments were received as per the agreement and the HAMP Final Modification Agreement was sent to your attention on July 2, 2013." (Id. ¶ 32.) PHH then claimed that Plaintiff's loan matured on June 2, 2013. (Id. ¶ 33.) PHH stated that "on July 31, 2013 it was determined that PHH would be unable to offer [Plaintiff] a HAMP modification because [her] loan had already reached its maturity date." (Id. ¶ 35.) PHH then stated that "in the process of completing the modification, PHH was notified that the investor on the loan will not allow the maturity date to be extended." (Id. ¶ 37.)

Regarding PHH's erroneous statement that Plaintiff's loan matured on June 2, 2013, Plaintiff fails to plausibly allege that this statement, as it relates to her eligibility for a HAMP modification, proximately caused her harm. Plaintiff argues that her loan matured July 2, 2013, not June 2, 2013, and thus

"entered into the HAMP modification before [her] Loan matured."
(Id. ¶ 36.) Taking the facts in the light most favorable to
Plaintiff, however, she still cannot plausibly allege that PHH's
statement that her loan matured on June 2, 2013, proximately
caused her harm. The Complaint itself states that PHH did not
determine that it would be unable to offer a HAMP modification
until July 31, 2013 — after either the actual maturity date of
July 2, 2013, or the erroneous maturity date of June 2, 2013;
Plaintiff's loan had already matured either way. The erroneous
statement of the date Plaintiff's loan matured was thus
immaterial.

Moreover, Plaintiff submits no facts as to which maturity
date the investor was using when it informed PHH that it would
"not allow the maturity date to be extended." (Id. ¶ 37.) Even
taking the facts in the light most favorable to Plaintiff, the
facts are insufficient to "allow[] the court to draw the
reasonable inference that [PHH] is liable." Iqbal, 556 U.S. at
678. Plaintiff therefore cannot plausibly allege that use of
this erroneous date proximately caused her harm.

Finally, regarding PHH's alleged violation of HAMP
regulations, which "do not permit an investor to withdraw a HAMP
modification that has been offered and accepted," (Compl. (Doc.
5) ¶ 39), Plaintiff fails to submit facts supporting a claim for

unfair and deceptive trade practices. At most, this fact

supports a potential breach-of-contract claim, and this is

insufficient to sustain a UDTPA action, absent aggravating

circumstances. The court finds Johnson v. J.P. Morgan Chase

Nat'l Corp. Servs., Inc., Civil Action No. 3:13-CV-678-MOC-DSC,

2014 WL 4384023, at *4 (W.D.N.C. Aug. 5, 2014), report and

recommendation adopted, No. 3:13-cv-00678-MOC-DS, 2014 WL

4384024 (W.D.N.C. Sept. 3, 2014), persuasive. There, the

plaintiff was invited to apply for a HAMP modification, made his

three payments, and then the defendant wrote him to notify him

that he was ineligible for a HAMP modification. Id. at *1.

Later, the defendant told the plaintiff that he was approved,

but a day later, the defendant informed the plaintiff that he

was ineligible. Id. The court nevertheless held that the

"allegations do not rise to the level of egregious behavior

required to successfully plead a UDTPA claim" and dismissed the

plaintiff's UDTPA claim. Id. at *4.

Such is the case here. The court cannot find as a matter of

law that these actions rise to the level of "substantial

aggravating circumstances." There does not appear to be any

behaviors rising to the level of forged documents or fraudulent

inducement; indeed, PHH did not allow Plaintiff to go through

with the modification. (See Compl. (Doc. 5) ¶ 37 ("[I]n the

process of completing the modification, PHH was notified that the investor on the loan will not allow the maturity date to be extended.").) It also does not appear from the Complaint that PHH knew the modification offer could not be accepted. See Tuten v. CitiMortgage, Inc., No. 4:14-CV-99-H, 2015 WL 12850549, at *9 (E.D.N.C. Jan. 9, 2015) (holding the plaintiff stated a UDTPA claim because the defendant "knew that its [HAMP trial period plan] offer could not be accepted because 'its own lending procedures precluded [the plaintiff's] loan from modification,' [but] nevertheless induced plaintiff to perform the terms contained in the [HAMP trial period plan] in return for a promised good—faith offer to modify her mortgage loan" (emphasis added)). While Defendant PHH's actions may have been unfair, they do not rise to the level of "unethical or unscrupulous," and Plaintiff's conclusory allegations that the actions were "unfair and deceptive," (Compl. (Doc. 5) ¶ 58), do nothing to stave off this conclusion.

Because Plaintiff fails to plausibly allege that Defendant PHH engaged in unfair or deceptive trade practices, Defendant PHH's motion to dismiss this claim pursuant to 12(b)(6) will be granted.

IV.   **CONCLUSION**

For the reasons set forth herein,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 7), is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to Service Process, (Doc. 10), is **GRANTED.**

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 13th day of March, 2020.

_____
United States District Judge